## Ulakovic, Appellant, *v.* Metropolitan Life Insurance Co.

Argued October 4, 1940. Before Schaffer, C. J., Maxey, Drew, Linn, Stern and Patterson, JJ.

*J. Thomas Hoffman,* for appellant.

*D. C. Jennings,* for appellee.

Opinion by Mr. Justice Maxey, October 28, 1940:

This is an appeal from the order of the court below discharging plaintiff's rule for judgment for want of a sufficient affidavit of defense. On August 9, 1928, August Vulakovic, now deceased, applied to the defendant company for a policy of insurance. He was examined and on August 17, 1928, a policy was issued. His wife, the appellant, was named beneficiary. Since the insured's death his widow has married Maurice Ulakovic. A little later the insured requested a change of insurance payments from annual to semi-annual installments. This change was made on October 13, 1928. A semi-annual premium of $46.20 was then paid. This put the policy in force for six months from the date of its issue in August. On October 22, 1928, the insured died. Proofs of death were furnished to the defendant by plaintiff, but the company refused to pay anything on the policy. On June 20, 1930, the defendant made a legal tender to the plaintiff of $46.20, with interest. This the plaintiff refused.

The action on the policy was brought on October 6, 1930. As justification for its refusal to honor this policy, defendant averred certain acts of fraud and deception on the part of the insured. The application signed by him answered in the negative the usual questions as to whether he ever suffered certain diseases or had any surgical operations or whether or not he had been treated within five years for any illness or ailment. Defendant averred it expected to prove that on or about July 20, 1923, the insured suffered a gun shot wound for which he was hospitalized both in Philadelphia and in Pittsburgh, and that the wound caused a partial paralysis of the left arm and an axillary aneurism, which resulted in death. It also was averred that the insured was advised of his serious condition. For further defects, it is averred the insured had been treated for gastroenteritis, even while the application for the policy was pending.

After the affidavit of defense was filed on October 28, 1930, no praecipe for issue was ever filed or any other step taken until January 18, 1940, when this rule for judgment was entered by the plaintiff. The position taken by plaintiff is that the affidavit of defense setting up fraud was filed on October 28, 1930, more than two years after the original date of the policy, August 17, 1928, and also more than two years after the date of its issue, October 12, 1928. The plaintiff invokes the standard incontestability clause which makes the policy "incontestible after it has been in force for a period of two years from its date of issue, . . ."

The court below said in its opinion: "Upon the pleadings as we find them then, according the attribute of verity to the affidavit of defense and assuming defendant's ability to prove the averments thereof, to require the payment of the proceeds of this policy would be in furtherance of a patent fraudulent misrepresentation by the insured. This, however, can be of no avail to defendant, if it did not, within two years from the date of issue, take such action as would constitute a contest of the policy. The plaintiff contends that mere notice of repudiation is insufficient and that if the insurer seeks to escape its liability it must show actual inauguration of a contest by appropriate action in a court and since, in the case at bar, no such contest was initiated, the defense is insufficient to prevent judgment. On the other hand, the defendant's position is that a definitive and clear notice of rejection is sufficient to meet the requirement as to contestability and that having taken such action on June 20, 1930, its defense is sound."

The opinion of the court below cites on the question thus raised the cases of *Prudential Life Ins. Co. v. Ptohides,* 122 Pa. Superior Ct. 469, 186 A. 386; *Feierman v. Ins. Co.,* 279 Pa. 507, 124 A. 171, and *Killian et al. v. Metropolitan Life Ins. Co.,* 251 N. Y. 44, 166 N. E. 798, in which last named case Chief Judge Cardozo,

speaking for the New York Court of Appeals, held that notice of rejection of the insurance contract is unavailing unless followed within the prescribed time, two years, by contest with legal process. The court below held that under our own decisions disavowal of liability within the two year period, accompanied by a specification of the grounds of rejection, was sufficient to effect cancellation of the contract.

It is not necessary for us in this case to discuss or decide the question thus discussed and decided by the court below, to wit: Does notice to the beneficiary of denial of liability by the insurance company and tender of the return of the premium paid terminate the liability of the insurance company under the policy? It is not necessary for the reason that the delay of nine years and three months after the date of filing the affidavit of defense without action by the plaintiff constitutes such laches as amounts to an abandonment of the case. In *Potter Title & Trust Co., Admr., v. Frank et al.,* 298 Pa. 137, 148 A. 50, this court affirmed the action of a court of common pleas in entering a non pros where suit was not brought for over five and one-half years after the cause of action arose, where an additional fourteen months elapsed before a statement of claim was filed; where nearly ten years more elapsed before any step was taken to bring the case to trial, and where the most important witness had died in the meantime. In that case this court said: "As a general rule, where the plaintiff suffers a pending suit to remain without action on his part for over six years, it might, unless there was compelling reason therefor, be treated as abandoned and a non pros properly entered." In *Prettyman v. Irwin,* 273 Pa. 522, 117 A. 195, we held in effect that an action will ordinarily be adjudged abandoned where plaintiff permits it to sleep for a longer period than is allowed for the commencement of the suit, unless the laches is satisfactorily explained. In *Munley v. Sugar Notch*

*Boro.,* 215 Pa. 228, 64 A. 377, we held that a plaintiff's delay of over eight years in bringing his pending case to trial was an abandonment and entitled the defendant to have the case non prossed.

It has always been the policy of the law to expedite litigation and not to encourage long delays. From this fact arose the various statutes of limitations, and the reasons why the law is unfavorable to delayed litigation are self-evident. If any person has a right which he wishes enforced, he should enforce it promptly. The person against whom the right is to be enforced might be greatly prejudiced by plaintiff's delay. Witnesses disappear or remove to distant parts and the entire aspect of the parties on both sides may change with the lapse of time. In *Waring Bros. v. Pa. R. R. Co.,* 176 Pa. 172, 35 A. 106, this court, in an opinion by Justice GREEN, quoted with approval what Chief Justice BLACK said in *Huffman's Heirs v. Stiger,* 1 Pitts. 185: "No honest man would be willing to live in a country where the law would require him to prove the actual falsehood and injustice of every stale claim which malice or cupidity might dig up against him. Hence, we have statutes of limitation, and, in cases to which they do not apply, we have presumptions which are equally strong. But where is the use of these wholesome regulations if a man may bring suit, suffer it to lie a quarter of a century and then revive it with the same effect as if it had been prosecuted with diligence from the beginning? It cannot be done. When neither party makes any move in the suit for a long time, there is a natural, and should be a legal presumption, that the dispute has been settled, and adjusted to the satisfaction of both."

The long delay of the plaintiff in this case in bringing the case to trial offends the spirit of the mandates embodied in the various statutes of limitation of this Commonwealth. The legislature has by proper enactment given expression to the feeling of mankind as to when

actions to redress wrongs should be brought. See the Acts of March 27, 1713, sec. 1, 1 Sm. Laws 76; June 24, 1895, sec. 2, P. L. 236; March 28, 1867, P. L. 48; and May 23, 1891, sec. 1, P. L. 109. These acts and similar acts, which cover all forms of actions, provide time limitations of not more than six years and in many instances much shorter periods of limitation. These and similar legislative enactments are expressive of the feeling of mankind that where there are wrongs to be redressed, they should be redressed without unreasonable delay, and where there are rights to be enforced, they should be enforced without unreasonable delay. In the instant case there has been unreasonable delay. The action must be treated as having been abandoned.

No formal petition for non pros was made in the court below until eight days after the court below discharged plaintiff's rule for judgment for want of a sufficient affidavit of defense and an appeal had been taken to this court. This fact, however, does not prevent this court taking official cognizance of the long delay in bringing this case to trial and adjudging it to be in legal effect an abandonment of the action. As to the power of this court to make an order appropriate to the case even when certain formalities of procedure have not been complied with in the court below, see *Com. v. Ragone,* 317 Pa. 113, at 126 and 127, 176 A. 454.

The judgment is affirmed.