430 A.2d 297

Etevenia SALVADO, Maria DeLuz Salvado, Stella Monteiro, Judite Monteiro and Lucretia Monteiro, a minor, Appellants,

v.

PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued Jan. 5, 1981.

Filed May 22, 1981.

Barbara E. Sarkin, Philadelphia, for appellants.

Patrick G. McDonald, Philadelphia, for appellee.

Before PRICE, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

This is an appeal from a summary judgment entered by the trial court in favor of the appellee insurer on the grounds that appellants' claims for benefits under the Pennsylvania No-Fault Insurance Act were barred by the statute of limitations.

On February 29, 1976, Maria DeLuz Salvado, Stella Monteiro, Judite Monteiro and Lucretia Monteiro, a minor, were passengers in a motor vehicle operated by Etevenia Salvado and insured by the appellee, Prudential Property and Casualty Insurance Company. As a result of the vehicle accident occurring that day, the driver and the passengers received injuries for which claims were made to the appellee insurer for benefits under the Pennsylvania No-Fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 et seq. These claims were paid in full. The last payment of benefits was made on November 18, 1976. On April 27, 1979, for the first time, claims for additional benefits were made to appellee on behalf of appellants. Appellee denied the claims because they were made more than two years after the last, prior payment of benefits. The instant action in assumpsit was then commenced.

Section 106(c)(1)[1] of the No-Fault Act establishes a limitation of actions as follows:

> If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier. *If no-fault benefits have been paid for loss arising otherwise than from death, an action for further benefits ... by either the same or another claimant, may be commenced not later than two years after the last payment of benefits.* (Emphasis added.)

1. 40 P.S. § 1009.106(c)(1).

This limitation would seem to bar the present action by appellants for additional benefits. There are no circumstances alleged or appearing of record that would allow the adult appellants to commence an action for additional benefits under the No-Fault Act more than two years after all claims had been paid. It is argued, however, that the statute of limitations was tolled for Lucretia Monteiro, who was thirteen years of age at the time of the accident, because of her minority. If this is correct, then the claim on her behalf should not have been terminated summarily.

Section 106(c)(5)[2] of the No-Fault Act is controlling. It provides as follows:

> If a person entitled to no-fault benefits is under a legal disability when the right to bring an action for the benefits first accrues, the period of his disability is not a part of the time limited for commencement of the action.

Whether minority is a "legal disability" which tolls the statute of limitations under the No-Fault Act has not been decided by the appellate courts of this state. The same issue, however, was previously before the Honorable Eugene Gelfand of the Court of Common Pleas of Philadelphia. See: *Robinson v. Safeguard Mutual Insurance Co.*, 3 Phila. Cty.Rptr. 548, 550–51 (1979). In that case, an original claim on behalf of a minor had been delayed for more than two years following the accident giving rise to a claim. The statute of limitations, it was held, was tolled during the period of legal disability caused by the claimant's minority.

■ The No-Fault Act does not contain a legislatively drafted definition of the term "legal disability." The term "disability," however, is defined in Black's Law Dictionary, 5th edition, as "[t]he want of legal capability to perform an act. [The] term is generally used to indicate an incapacity for the full enjoyment of ordinary legal rights; thus, persons under age, insane persons, and convicts are said to be under disability." In recognition of this disability, the Supreme Court has adopted rules requiring that civil actions by

**2.** 40 P.S. § 1009.106(c)(5).

and against minors be controlled by guardians appointed for that purpose. See: Pa.R.C.P.Nos. 2026 to 2050. We conclude, therefore, that "legal disability" was intended to include disability attributable to a claimant's minority.

In the instant case the trial court reasoned that even if minority was intended to be a legal disability under Section 106(c)(5) of the No-Fault Act, such disability was terminated after a claim had been made on behalf of the minor and paid by the No-Fault carrier. Under such circumstances, the court concluded, even the claim of a minor for additional benefits was barred after the expiration of two years following the last payment of benefits.

The difficulty with this result is that it is inconsistent with and carves out an exception to the clear language of Section 106(c)(5). This section of the Act directs that where a claimant is under a legal disability, the period of disability shall not be included in the period within which an action is to be commenced. The intent seems clear. During legal disability the statute of limitations is tolled. The statute creates no distinction between actions to recover benefits and actions to recover additional benefits.

Where, as here, the words of the statute are clear and free from ambiguity, the letter of it may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). See also: *Commonwealth of Pennsylvania, Labor Relations Board v. Teamsters Union Local No. 77*, 20 Pa.Cmwlth. 410, 342 A.2d 158 (1975). We cannot disregard the clear meaning of Section 106(c)(5) merely because, as appellee contends, a literal interpretation will adversely affect the ability of No-Fault carriers to settle claims of minors.[3] This contention if meritorious, is more properly addressed to the legislature.

---

3. The facts of the instant case do not require that we decide and we do not decide whether the legal disability caused by minority can be terminated and removed by the appointment of a guardian to represent the minor's interests and by court approval of the terms by which a minor's claim is settled.

■ However, we reject appellants' argument that the payment of additional benefits to the minor claimant will establish a new two year period within which adult claimants can also seek additional benefits. These claimants were under no disability, and there is no valid reason for tolling the period of limitations to permit their claims for additional benefits. The two year period within which to commence one or more actions therefor began to run on November 18, 1976, when the last payment of benefits was made. After the expiration of that period, claims for additional benefits by persons under no legal disability were barred. The right to sue for additional benefits, having been barred by the statute of limitations, was not revived merely because another claimant had been under a legal disability which tolled the statute of limitations as to such person's claim. Any other interpretation would be absurd and would be inconsistent with the clear legislative intent expressed in Section 106(c)(1).

The judgment entered in favor of appellee and against Lucretia Monteiro, a minor, is reversed, and the matter is remanded for further proceedings. In other respects, the order entering judgment in favor of appellee is affirmed.

PRICE, J., files a concurring and dissenting opinion.

PRICE, Judge, concurring and dissenting:

I agree with the majority's conclusion that the claims of those appellants not laboring under a legal disability were barred by the lapse of more than two years from the last payment of benefits and that a claimant's minority is to be treated as a "legal disability" within the purview of section 106(c)(5). I disagree, however, that the duration of a claimant's legal disability is to be excluded from the calculation of time in which an action for *further* benefits must be commenced. Therefore, I respectfully dissent.

The time limitations imposed upon actions to recover basic loss benefits under the No-fault Act are set forth in section

106(c).[1] An action to recover benefits for losses arising otherwise than from death must be brought within two years from the date of actual or constructive knowledge of a motor vehicle-related loss, or four years after the accident, whichever is earlier.[2] If no-fault benefits have in fact been paid, there obtains an additional two year statutory period from the date of the last payment during which the same, or another, claimant may commence an action for further benefits.[3]

However, section 106(c)(5) creates an exception to these time limitations.[4] That section expressly provides that the duration of a claimant's legal disability is not included as part of the time limited for beginning an action for no-fault benefits.

In reaching its decision that Lucretia Monteiro's action for further benefits was not time-barred, the majority held that the disability exception contained in section 106(c)(5) applies equally to all of the limitation provisions contained in section 106(c)(1).[5] They reasoned that since the language of section 106(c)(5) unambiguously provides that the time fixed for "commencement of [an] action"[6] is tolled during periods of disability, even actions to recover additional benefits are within its intended scope. According to the majority, any other result would be tantamount to disregarding the clear meaning of section 106(c)(5) under the pretext of pursuing its spirit.

I disagree that section 106(c)(5) is so plainly expressive of an intent to encompass every action for benefits that nothing is left for interpretation. Indeed, if anything is free from doubt, it is that this section's indeterminate reference

1. 40 P.S. § 1009.106(c) (Supp.1980–81).

2. *Id.* § 1009.106(c)(1).

3. *Id.*

4. 40 P.S. § 1009.106(c)(5) (Supp.1980–81).

5. *See* notes 2 & 3 and accompanying text *supra*.

6. 40 P.S. § 1009.106(c)(5) (Supp.1980–81).

to the complex limitation provisions of the Act creates genuine uncertainty whether it has equal application to them all. In my view, to allow Lucretia Monteiro's claim because of her minority [7] does violence to both the general purposes underlying the No-fault Act and those purposes identified specifically with its statutes of limitation.

The No-fault Act is animated by one general purpose and intent: "[T]o establish at reasonable cost to the purchaser of insurance, a statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." [8] The limitation periods in section 106(c)(1) are designed to protect the same important public policy considerations expressed in other statutes of repose.[9] Of course, their particular complication rests upon the fact that, in contrast to the customary practice of paying tort claims in lump sum settlements or judgments, the thrust of the No-fault Act is to provide life-long medical expense benefits to those needing continuing treatment.[10] The provision under which the period of limitation runs from the date of receipt of the last payment of benefits insures full compensation for a claimant's loss even where the extent of that loss may not be wholly apparent until a

**7.** "Minority" refers exclusively to that class of claimants who, at the time the right to bring an action first accrues, have not attained majority. It should not be confused with considerations of apparent hardship, as where a victim has been prevented from asserting a claim which could have not been reasonably discovered at an earlier date. *See Rigotti v. J. C. Penney Cas. Ins. Co.*, 13 D & C 3d 472 (1980). The limitations provisions of the No-fault Act should not serve to preclude such a claim, nor should this result be different if a minor were involved.

**8.** 40 P.S. § 1009.102(b) (Supp. 1980–81).

**9.** Statutes of limitation are designed to suppress stale or fraudulent claims which may be difficult to defend by virtue of the passage of time. *See Ins. Co. of North America v. Carnahan*, 446 Pa. 48, 284 A.2d 728 (1971); *Ulakovic v. Metropolitan Life Ins. Co.*, 339 Pa. 571, 16 A.2d 41 (1940).

**10.** In accordance with the Act, loss accrues as expense is incurred, and not when injury is sustained. 40 P.S. § 1009.106(a)(1).

significant period of time has elapsed.[11]   In addition, it
"encourages exclusively out-of-court handling of claims by
making it unnecessary for the claimant to consider bringing
an action to protect his rights so long as benefits are being
paid." [12]

In view of these objectives, no purpose is served by
allowing a minor claimant who has both elected to pursue
her right to no-fault benefits and been paid for economic
loss to bring suit for additional benefits after expiration of
the two year limitation period.   This is not the case of a
minor claimant who has failed to sue for *original* protection
more than four years after the accident or two years from
the date of actual or constructive knowledge of a motor
vehicle-related loss.   Nor is it a situation where the interests
of individual justice outweigh the public's interest in repose,
as where a plaintiff has been prevented from asserting his
right to no-fault benefits because the existence of his injury
was not known and could not be reasonably ascertained.
The instant action was instituted more than two years after
Lucretia Monteiro last received basic reparation benefits for
her claimed loss.   In this circumstance, a minor plaintiff is
plainly in less need of protection from delay in the com-
mencement of an action than if there had been no prior
timely claim for benefits, and any bar to the running of the
already generous time limits established by the Act only
rewards the negligence of a minor who has slept on his
rights.

Application of section 106(c)(5) to actions to recover fur-
ther benefits also inflicts obvious and unnecessary harm on
insurers.   While ordinarily an adult claimant could not re-
cover any portion of his loss incurred more than two years
before the date on which his action was commenced, a minor
plaintiff would be allowed to recover benefits for any por-
tion of his claimed loss.   "[T]he difficulty of determining the

11.  *See* Uniform Motor Vehicle Accident Reparations Act § 28, Com-
    ment.

12.  R. Keeton & J. O'Connell, Basic Protection for the Traffic Victim
    435 (1965).

merits of long-delayed claims" in this situation, as well as "the attendant opportunities for fraud," are inconsistent with the policy underlying the Act's limitation periods.[13] In addition, "the resulting impact on insurance . . . rating processes"[14] by insurers' doubts about successfully defending claims of this type defeats the Act's clearly defined goal of providing economic protection to all accident victims at reasonable cost.[15]

The cost of insurance will also be adversely affected by the impracticability of closing thousands of files through out-of-court settlements. As previously mentioned, the two year limitation period was intended, *inter alia*, to encourage the settlement of claims by eliminating the necessity for a claimant to bring an action as long as benefits are being paid by his insurer.[16] The willingness of both parties to bargain flows, in theory, from the mutuality of advantage to each with his own reasons for wanting to avoid trial. In its immediate effect, however, tolling the limitation period during periods of disability robs the insurer of his incentive to pay a disputed loss since the claimant would no longer be compelled to bring suit within two years.

For all of the foregoing reasons, I would affirm the decision of the trial court that this minor's action to recover further benefits is not subject to section 106(c)(5). Moreover, I would hold that *the operative effect of invoking the No-fault Act and receiving a payment of benefits is to waive* any specific personal disability that would ordinarily arrest the running of the statute of limitations in an original action. The literal import of section 106(c)(5) is clear: a person under legal disability should be given *an opportunity to assert his claim in the same manner as other persons sui juris.* It is not, however, intended to furnish a dilatory

13. *Id.*

14. *Id.*

15. *See* 40 P.S. § 1009.102(b) (Supp.1980–81); *id.* § 1009.504(b).

16. *See* note 12 and accompanying text *supra.*

314

plaintiff with the advantage of establishing his claim at the expense of the Act's legislative purposes.

